B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Fernando A. Neiva | DEFENDANTS  Loancare, LLC;<br>Patriot Auctioneers, LLC; Sullivan & Sullivan<br>Auctioneers, LLC; and John Does #1-20 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Richard S. Ravosa, Esq. and Matthew M. Hamel, Esq.<br>Ravosa Law Offices 300 Commercial Street, Ste. 2<br>Boston, MA 02109 (617) 720-1101 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Action seeking to invalidate a purported foreclosure of real property and for money damages based on tort claims associated with the purported foreclosure.
11 U.S.C. §§ 105(a), 362(a), and 548; and 28 U.S.C. § 2201

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Fernando A. Neiva | BANKRUPTCY CASE NO.    23-40098 | |
| DISTRICT IN WHICH CASE IS PENDING    Massachusetts | DIVISION OFFICE<br>Worcester | NAME OF JUDGE<br>Hon. Elizabeth D. Katz |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Richard S. Ravosa | | |
| DATE<br>May 4, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Richard S. Ravosa, Esq. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: )<br><br>FERNANDO NEIVA, )<br><br>Debtor )<br><br>)<br>FERNANDO NEIVA, )<br><br>Plaintiff )<br><br>v. )<br>LOANCARE, LLC, PATRIOT )<br>AUCTIONEERS, LLC, SULLIVAN & )<br>SULLIVAN AUCTIONEERS, LLC, )<br>AND JOHN DOES #1-#20 )<br><br>Defendants ) | CHAPTER 13<br>CASE NO. 23-40098-EDK<br><br><br><br><br><br><br><br><br><br><br>ADVERSARY PROCEEDING NO. |

**<u>VERIFIED COMPLIANT TO ENJOIN COMPLETION OF FORECLOSURE AUCTION
AND/OR CORRECTION OF CHAIN OF TITLE, RESTRAIN ENFORCEMENT OF LIEN
AND AVOID TRANSFER OF REAL PROPERTY AND FOR MONETARY DAMAGES
SUFFERED DURING PURPORTED FORECLOSURE OF REAL PROPERTY</u>**

Pursuant to 11 U.S.C. § 548, 11 U.S.C. § 362(a), 11 U.S.C. § 105(a), Mass. Gen. Laws

ch. 109A, Fed. R. Bankr. P. 7001(1), the Debtor, Fernando Neiva, (hereinafter, "Plaintiff") by

and through his undersigned Counsel, seeks a determination that the purported foreclosure action

conducted by the Defendant was invalid as a matter of law and that title to the subject property

should, therefore, be quieted in the Plaintiff and/or that the purported transfer of property through

foreclosure is avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 548 and/or Mass. Gen.

Laws ch. 109A, and violated Mass. Gen. Laws ch. 244, and that Defendants knowingly and

willfully engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws ch.

93A, and further, breached its duty to act in good faith and with reasonable diligence in order to

protect the Plaintiff/Debtor/Mortgagor's interest in the subject property, i.e., the equity.

## JURISDICTION AND VENUE

1. On February 2, 2023, ("the Petition Date"), the Plaintiff filed a voluntary petition in the

   United States Bankruptcy Court for the District of Massachusetts under Chapter 13 of the

   Bankruptcy Code, Case No. 23-40098.

2. The Court, therefore, has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This

   proceeding is a core proceeding. An Adversary Proceeding is required by Fed. R. Bankr.

   P. 7001 and the Court has jurisdiction to enter a final judgment.

3. Venue of this action is appropriate based on the underlying bankruptcy case.

## PARTIES

4. The Plaintiff, Fernando Neiva, is a natural person who maintains his principal residence at

   45 Liberty Street, Marlborough, MA 01752.

5. Defendant Loancare, LLC, is a limited liability company organized under the laws of the

   Commonwealth of Virginia with a principal place of business located at 3637 Sentara

   Way, Virginia Beach, Virginia and is the purported holder of the mortgage on the

   Plaintiff's principal residence.

6. Defendant Patriot Auctioneers, LLC ("PATRIOT") is a limited liability company

   organized under the laws of the Commonwealth of Massachusetts with a principal place

   of business at 148 Route 6A, Sandwich, Massachusetts.

7. Defendant Sullivan & Sullivan Auctioneers, LLC ("SULLIVAN") is a limited liability

   company organized under the laws of the Commonwealth of Massachusetts with a

   principal place of business at 148 Route 6A, Sandwich, Massachusetts.

8. Upon information and belief, Defendant PATRIOT is a wholly owned subsidiary of
   Defendant SULLIVAN.

9. Defendants PATRIOT and SULLIVAN both utilitze Massachusetts Auctioneer License
   No. 107.

10. Defendant PATRIOT conducted the purported foreclosure auction of the subject property
    on or about January 11, 2023, as more thoroughly described below.

11. Defendants John Doe #1 through John Doe #20 are natural persons, of uknown residency,
    who appeared to bid at the purported foreclosure and one of whom was the successful
    bidder at the purported foreclosure. Once the identities of these persons are ascertained,
    this Complaint shall be amended to include their identities.

## NATURE OF THE ACTION

12. This proceeding seeks to set aside the purported foreclosure auction of the Plaintiff's real
    property, that as of this writing, is incomplete, located at and known as 45 Liberty Street,
    Marlborough, Massachusetts (the "Property"), that occurred on January 11, 2023, and
    pursuant to 11 U.S.C. § 362 prevent the completion of the transfer of the subject property
    to the high bidder(s), in effect restraining the Defendant's enforcement of the mortgage
    lien on the subject premises and return all parties to the status quo ante, in addition to
    seeking damages, costs, and legal fees.

## FACTS

13. On August 5, 2014, the Plaintiff took title to the subject property via a quitclaim deed,
    dated July 15, 2014, and recorded in the Middlesex (Southern District) Registry of Deeds
    in Book 64034, Page 246.

14. On or about August 29, 2014, the Plaintiff executed a promissory note allegedly in favor of Mid-Island Mortgage Corporation in the original principal balance of $160,256.00.

15. On or about August 29, 2014, the Plaintiff executed an alleged mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Mid-Island Mortgage Corporation. The alleged mortgage was recorded in the aforementioned Registry of Deeds in Book 64158, Page 568.

16. On or about April 2, 2018, MERS, as nominee for Mid-Island Mortgage Corporation recorded an assignment of the Mortgage to Mid-Island Mortgage Corporation. The assignment is recorded in the aforementioned Registry of Deeds in Book 70816, Page 526.

17. On or about August 10, 2021, Mid-Island Mortgage Corporation recorded an assignment of the Mortgage to U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust I. The assignment is recorded in the aforementioned Registry of Deeds in Book 78441, Page 185.

18. On or about November 9, 2021, U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust I recorded an assignment of the Mortgage to U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust II. The assignment is recorded in the aforementioned Registry of Deeds in Book 79101, Page 66.

19. On or about November 16, 2021, U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust II recorded an assignment of the Mortgage to Lakeview Loan Servicing, LLC. The assignment is recorded in the aforementioned Registry of Deeds in Book 79147, Page 543.

20. On or about November 29, 2021, U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust I recorded a corrective assignment of the Mortgage to U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust II. The corrective assignment is recorded in the aforementioned Registry of Deeds in Book 79232, Page 447.

21. On or about December 1, 2021, U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust I recorded an assignment of the Mortgage to the Defendant Loancare, LLC. The assignment is recorded in the aforementioned Registry of Deeds in Book 79256, Page 180.

22. On or about December 21, 2021, Lakeview Loan Servicing, LLC recorded an assignment of the Mortgage to U.S. Bank, National Association , not in its individual capacity, but solely as Trustee for OVLAC EBO Trust II. The assignment is recorded in the aforementioned Registry of Deeds in Book 79401, Page 71.

23. On or about April 13, 2022, U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust II recorded an assignment of the Mortgage to the Defendant Loancare, LLC. The assignment is recorded in the aforementioned Registry of Deeds in Book 79972, Page 452.

24. On or about April 20, 2022, U.S. Bank, National Association, not in its individual capacity, but solely as Trustee for OVLAC EBO Trust II recorded an assignment of the Mortgage to the Defendant Loancare, LLC. The assignment is recorded in the aforementioned Registry of Deeds in Book 80003, Page 410.

25. On or about January 11, 2023, Defendants PATRIOT and SULLIVAN conducted a purported foreclosure auction at the subject property.

26. On or about January 11, 2023, John Does #1-#20 arrived at the Property to place bids.

27. Before bidding took place, certain of John Does #1-#20, some or all of whom were present to bid on the property, without permission of the Plaintiff or any other person lawfully present at the Property, forced open a door of the Property and let themselves into the Property.

28. The Plaintiff, and other persons lawfully present in the Property, to wit, Ricardo Jose da Silva Junior, Jonathan de Oliveira, Everton Henrique de leles Silva, Natalia Lopes, Daniel Floriano do Santos, and Milton de Oliveira Lopes, told the John Does #1-#20 to leave the Property and go back outside.

29. The John Does #1-#20 who entered the dwelling without permission, refused to leave the Property and looked around and moved about the inside of the Property.

30. The presence of the John Does in the Property caused the Plaintiff great emotional distress.

31. The Plaintiff was hospitalized at UMASS Memorial Medical Center in Worcester, MA from January 27, 2023 through February 2, 2023, and is still receiving medical treatment following the purported foreclosure, due to the emotional trauma and pandemonium experienced on January 11, 2023 that was caused by the Defendants, in part due to their breaching the peace, breaking and entering into the Plaintiff's home and running amok inside the Plaintiff's house, and otherwise causing consternation in the community.

32. On the date of the purported foreclosure, the Property had an estimated fair market value of $646,400.00, and as of May 3, 2023, Zillow states that the subject property has an estimated fair market value of $749,900.00.

33. Should this purported foreclosure be allowed to consummate, the Plaintiff could be divested of approximately $400,000.00 in equity, depending on what the high bid was at the purported auction.

34. To date, the Defendant lender has not filed a proof of claim in the underlying Chapter 13 case, and the claims deadline has passed, despite being notified by Plaintiff's counsel of the pending bankruptcy case.

35. On April 5, 2023 at 2:31pm, Plaintiff's counsel emailed Kendra Hayes at Marinosci Law Group and offered to file a motion to sell the real property through the bankruptcy court and employ a real estate broker who would more effectively market the subject real estate so that upon sale, the secured creditor would be paid in full, and so that the Plaintiff would realize a greater surplus than he would receive, if any, from the purported auction that occurred on January 11, 2023.

36. On May 3, 2023, the undersigned counsel was informed by Kendra Hayes of the Marinosci Law Group that the Defendant lender on May 2, 2023 authorized the transfer of the subject property to the high bidder and that the closing is scheduled to occur next week.   Should this purported foreclosure be allowed to conclude in the recording of a deed naming the high bidder as grantee, in complete derogation and disregard of the automatic stay under 11 U.S.C. § 362, the Plaintiff stands to be divested of what is presently an unknown amount of equity.

37. Plaintiff's counsel attempted to verify the amount of the high bid at the foreclosure auction as well as ascertain the identity of the high bidder, but Defendant's counsel was unable to provide this information to Plaintiff's counsel.

## COUNT I
## DECLATORY JUDGMENT (28 U.S.C. § 2201)

## THAT THE DEFENDANTS VIOLATED FORECLOSURE STATUTES AND THAT THE PURPORTED FORECLOSURE SALE IS THEREFORE VOID AS A MATTER OF LAW
### Fernando A. Neiva
### v.
### Loancare, LLC

38. The Plaintiff, Fernando A. Neiva, repeats and reavers paragraphs one through thirty-seven of this Complaint as if expressly rewritten and set forth herein.

39. The Defendants, jointly and severally, conducted a foreclosure that they knew or should have known breached the peace and caused consternation in the community, to which there are several eyewitness accounts.

40. Mass. Gen. Laws Chapter 244, § 14, as interpreted by the U.S. Bankruptcy Court and Massachusetts Supreme Judicial Court state that a foreclosing mortgagee owes a duty of good faith and reasonable diligence to the mortgagor.

41. Indeed, in Massachusetts, mortgagees must strictly comply with the terms of the Statutory Power of Sale and all statutes relating to non-judicial foreclosures.[1]

42. Furthermore, Mass. Gen. Laws Chapter 244, § 14 has been expressly identified as one of those statutes relating to foreclosures, with which strict compliance is required.[2]

43. The Defendants have manifestly and materially failed to meet their obligations of strict compliance with Mass. Gen. Laws Chapter 244, § 14.

---

[1] "This court has recently reemphasized the point that in light of the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms' ; the failure to do so results in no valid execution of the power, and the sale is wholly void," *Pinti v. Emigrant Mortg. Co.*, 33 N.E.3d 1213, 1218 (Mass. 2015), internal citations omitted.

[2] "As *Schumacher*, 467 Mass. at 429, 5 N.E.3d 882, suggests, there is a well-established set of statutes relating to mortgage foreclosures effected pursuant to a power of sale: § 21 and G.L. c. 244, §§ 11 –17C. See *Eaton*, 462 Mass. at 581, 969 N.E.2d 1118 ("In addition to G.L. c. 183, § 21, itself, the 'statutes relating to the foreclosure of mortgages by the exercise of a power of sale,' id., are set out in G.L. c. 244, §§ 11 –17C"); *Ibanez*, 458 Mass. at 646, 941 N.E.2d 40 (power of sale in mortgage includes reference to G.L. c. 183, § 21, and is "further regulated by G.L. c. 244, §§ 11 –17C "). Each of the statutes included within G.L. c. 244, §§ 11 –17C, pertains to the process and mechanics of the foreclosure sale itself." Id. at 1244.

44. The Defendants failed to make even bare minimal attempts to market the Property to attract high bidders.

45. The Defendants failed to acquire an appraisal of the Property from a duly licensed real estate appraiser prior to the purported foreclosure.

46. The Defendants failed to employ the services of a real estate broker to market the Property for sale and/or to attract bidders to the auction.

47. The Defendants failed to list the Property for sale in the real estate section of local newspapers.

48. The Defendants have manifestly failed to use good faith and reasonable diligence to market the Property and attract high bids.

49. Therefore, the purported foreclosure is void.

WHEREFORE, the Plaintiff demands a judgment and decree voiding the purported subject foreclosure auction and enter judgment against the Defendants in an amount sufficient and reasonable to adequately compensate the Plaintiff for the damages that he has incurred, plus interest, costs, and reasonable attorneys' fees.

## COUNT II

### VIOLATION OF 11 U.S.C. § 548 AS FRAUDULENT TRANSFER
**Fernando A. Neiva**
**v.**
**Loancare, LLC**

50. The Plaintiff repeats and reavers paragraphs one through forty-nine of this Complaint as if expressly rewritten and set forth herein.

51. 11 U.S.C. § 548 allows "an estate representative to avoid a transfer made or obligation incurred within" two years before the bankruptcy petition was filed.[3]

---

[3] *In re Tri-Star Technologies, Inc.*, 260 B.R. 319, 323 (Bankr. D. Mass. 2001).

52. One way to prevail under this statute is by proving, by a preponderance of the evidence, that the Debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation," and the Debtor "was insolvent on the date such transfer was made [. . .] or became insolvent as a result of such transfer."[4]

53. In considering whether Section 548 may be used to avoid foreclosures where the winning bid is lower than the value of the property, the Supreme Court held that a fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact received at the foreclosure sale, *so long as* all the requirements of the State's foreclosure law have been complied with.[5]

54. As previously demonstrated, Defendants have manifestly failed to strictly comply with Massachusetts' foreclosure statute(s), particularly Mass. Gen. Laws ch. 244 § 14.

55. However, the Defendants have also breached other duties with respect to foreclosing a mortgage in Massachusetts.

56. In Massachusetts, in order to comply with the foreclosure laws, the mortgagee must, in addition to a "literal compliance with the terms of the power (of sale), was bound to exercise good faith and to put forth reasonable diligence to protect the interests of the mortgagor."[6]

57. As detailed below, Defendants have breached the duty of good faith and reasonable diligence in conducting the sale.

58. Therefore, Defendants have not complied with the requirements of the Commonwealth's foreclosure laws, have not provided a reasonably equivalent price, which, in turn, allows for the avoidance of the sale as a fraudulent transfer under 11 U.S.C. §§ 548 and 549.

---

[4] 11 U.S.C. § 548(a)(1)(B).
[5] *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 545 (1994).

59. The sale price may be grossly inadequate and is indicative of bad faith when coupled with the lack of diligence in Defendants' (lack of) marketing the property for sale, and is grounds to void the foreclosure auction.

60. To the best of Plaintiff's knowledge, there was no advertising in the real estate section of any newspaper, nor was there any notice given to real estate brokers with a limited radius of the property.

61. Neither Defendants, nor any party acting on their behalf, made any effort to seek Plaintiff's permission for potential bidders to inspect the interior of the home, but instead broke into the Plaintiff's home on the day of the scheduled auction.

62. No good faith effort whatsoever was made by Defendants to market the subject property for sale and, as a direct result thereof, the property may have sold for far below market value.

63. Should the sale be completed, this may result in a loss by the Plaintiff of a substantial amount of his equity in said real estate, which he is entitled to as a matter of law and equity.

WHEREFORE, the Plaintiff demands a judgment and decree voiding the foreclosure auction that occurred on or about January 31, 2022 and enter judgment against Defendants in an amount sufficient and reasonable to adequately and fairly compensate Plaintiff for the damages that he has incurred, plus interest, costs, and reasonable attorneys' fees.

**COUNT III**
**VIOLATION OF MASS. GEN. LAWS. Ch. 109A AS A FRAUDULENT**
**CONVEYANCE**
**Fernando A. Neiva**
**v.**
**Loancare, LLC**

---

[6] *Atlas Mort. Co. v. Tebaldi*, 304 Mass. 554, 557 (1939).

64. The Plaintiff repeats and reavers paragraphs one through sixty-three of this Complaint as if expressly rewritten and set forth herein.

65. If allowed to be concluded, the sale and transfer of the subject property is a violation of the Massachusetts Uniform Fraudulent Transfer Act.

66. Defendants failed to act in good faith and use reasonable diligence to protect the interest of the mortgagor in engaging in such conduct that would catastrophically divest the Plaintiff of a substantial amount of his equity that he is entitled to as a matter of law and equity.

67. The sale of the subject property is a violation of the Massachusetts Uniform Fraudulent Transfer Act, Mass. Gen. Laws ch. 109A as the sale took place for less than market value and is a fraudulent conveyance, under 11 U.S.C. § 548 and 549 which command that present fair market equivalent value must be obtained before the foreclosure sale will be left undisturbed by the Bankruptcy Court.

68. "The analysis of what constitutes 'reasonably equivalent value' under" Mass. Gen. Laws ch. 109A "mirrors the analysis of 'reasonably equivalent value' under 11 U.S.C. § 548."[7]

69. The Plaintiff may prevail under 11 U.S.C. § 548 by proving, by a preponderance of the evidence, that the Debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation," and the Debtor "was insolvent on the date such transfer was made [. . .] or became insolvent as a result of such transfer."[8]

70. In considering whether Section 548 may be used to avoid foreclosures where the winning bid is lower than the value of the property, the Supreme Court held that a fair and proper price, or a "reasonably equivalent value," for foreclosed property, is the price in fact

---

[7] *In re Sergio*, 552 B.R. 9, 17 (Bankr. D. Mass. 2016), citing *In re Tri-Star Technologies, Inc.*, 260 B.R. 319, 324 (Bankr. D. Mass. 2001).

received at the foreclosure sale, *so long as* all the requirements of the State's foreclosure law have been complied with.[9]

71. As previously demonstrated, Defendants have manifestly failed to strictly comply with Massachusetts' foreclosure statute(s), particularly Mass. Gen. Laws ch. 244 § 14.

72. However, the Defendants have also breached other duties with respect to foreclosing a mortgage in Massachusetts.

73. In Massachusetts, in order to comply with the foreclosure laws, the mortgagee must, in addition to a "literal compliance with the terms of the power (of sale), was bound to exercise good faith and to put forth reasonable diligence to protect the interests of the mortgagor."[10]

74. As detailed below, Defendants have breached the duty of good faith and reasonable diligence in conducting the sale.

75. The sale price is grossly inadequate and is indicative of bad faith when coupled with the lack of diligence in Defendants' (lack of) marketing the property for sale, and is grounds to void the foreclosure auction.

76. To the best of Plaintiff's knowledge, there was no advertising in the real estate section of any newspaper, nor was there any notice given to real estate brokers with a limited radius of the property.

77. Neither Defendants, nor any party acting on their behalf, made any effort to seek Plaintiff's permission for potential bidders to inspect the interior of the home.

78. No good faith effort whatsoever was made by Defendants to market the subject property for sale and, as a direct result thereof, the property sold for far below market value.

---

[8] 11 U.S.C. § 548(a)(1)(B).
[9] *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 545 (1994).

79. Should the sale be completed, this would result in a loss by the Plaintiff of a substantial amount of equity in said real estate.

WHEREFORE, the Plaintiff demands a judgment and decree voiding the purported subject foreclosure auction and enter judgment against the Defendants in an amount sufficient and reasonable to adequately compensate the Plaintiff for the damages that he has incurred, plus interest, costs, and reasonable attorneys' fees.

## COUNT IV
## BREACH OF THE DUTY OF GOOD FAITH AND REASONABLE DILIGENCE
### Fernando A. Neiva
### v.
### Loancare, LLC

80. The Plaintiff repeats and reavers paragraphs one through seventy-nine of this Complaint as if expressly rewritten and set forth herein.

81. In Massachusetts, a mortgagee who attempts to execute a power of sale contained in a mortgage is bound to exercise good faith and use reasonable diligence to protect the rights and interests of the mortgagor under the contract.[11]

82. "Consistent with the requirements, the mortgagee has a duty 'to obtain for the property as large a price as possible."[12]

83. A disparity in price alone is not sufficient to invalidate a foreclosure, but along with other circumstances, it can be.[13]

---

[10] *Atlas Mort. Co. v. Tebaldi*, 304 Mass. 554, 557 (1939).
[11] *In re Edry*, 201 B.R. 604 (Bankr. D. Mass. 1996). See also: *In re Brandao*, 567 B.R. 396, 405 (Bankr. D. Mass. 2017) "A mortgage holder must not only act in strict compliance with its power of sale but must also act in good faith and use reasonable diligence to protect the interests of the mortgagor," quoting *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637 647 n.16 (Mass. 2011).
[12] *In re Brandao*, 567 B.R. at 406, quoting *Williams v. Resolution GGF OY*, 417 Mass. 377 (1994).
[13] Id. at 606

84. Where the mortgagee fails to adequately advertise the property, and provides no notice to those who may be interested in purchasing the property, together with a grossly inadequate sale price, a foreclosure may be invalidated.[14]

85. The sale price of the subject property at the purported auction on January 11, 2023 may have been so grossly inadequate so as to indicate bad faith on the part of the Defendants.

86. The successful bidder submitted a high bid that is currently unknown, and Defendants have refused to provide any information relative to the amount of the high bid, or the identity of the high bidder.

87. The fair market value of the property is in excess of approximately $700,000.00 according to Zillow, and the Plaintiff owes approximately $220,000.00 to the Defendant, Loancare, LLC.

88. To the best of Plaintiff's knowledge, there was no advertising in the real estate section of any newspaper, only the statutory notices of sale, and there was no notice given to real estate brokers within a limited radius of the property, nor did the Defendants, nor any party(ies) acting on their behalf, request access to the property to market it for sale or to show to potential bidders.

89. Should the sale be completed, it may result in the loss by the Plaintiff of a substantial amount of equity in said real estate.

WHEREFORE, the Plaintiff demands a judgment and decree voiding the purported subject foreclosure action and enter judgment against Defendants in an amount sufficient and reasonable to adequately compensate Plaintiff for the damages that he has incurred, plus interest, costs, and reasonable attorneys' fees.

---

[14] *Bon v. Graves*, 216 Mass. 440 (1914).

## COUNT V
## UNJUST ENRICHMENT
**Fernando A. Neiva**
**v.**
**Loancare, LLC**

90. The Plaintiff repeats and reavers paragraphs one through eighty-nine of this Complaint as if expressly rewritten and set forth herein.

91. If Defendants are allowed to continue with the enforcement of the lien and transfer the subject property to the purchaser or the nominee of same, that would operate to the unconscionable detriment of the Plaintiff to have his equity in the subject property transferred to the purchaser in exchange for payment of less than fair market value at a time when the Debtor was insolvent.

92. If the transfer of the subject property were to occur, Defendants would be eviscerating Plaintiff's equity stake in the subject property by recording a foreclosure deed to the purchaser, thereby allowing the purchaser to knowingly abscond with Plaintiff's equity (thereby enriching themselves by an equal amount) of said equity.

WHEREFORE, the Plaintiff demands a judgment and decree voiding the purported subject foreclosure action and enter judgment against Defendants in an amount sufficient and reasonable to adequately compensate Plaintiff for the damages that he has incurred, plus interest, costs, and reasonable attorneys' fees.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Fernando A. Neiva**
**v.**
**All Defendants**

93. The Plaintiff repeats and reavers paragraphs one through ninety-two of this Complaint as if expressly rewritten and set forth herein.

94. Defendants, by their intentional conduct, caused Plaintiff to suffer emotional distress.

95. As a direct and proximate result of the Defendants' intentional conduct, Plaintiff was

caused to sustain severe physical injuries and emotional distress which he was

hospitalized for, and continues to suffer great pain of body and mind, incurred and will

continue to incur expenses for medical treatment and care and was prevented from

engaging in his usual activities and was otherwise damaged.

WHEREFORE, the Plaintiff demands a judgment and decree voiding the purported subject

foreclosure action and enter judgment against Defendants in an amount sufficient and

reasonable to adequately compensate Plaintiff for the damages that he has incurred, plus

interest, costs, and reasonable attorneys' fees.

<u>**COUNT VII**</u>
<u>**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</u>
**Fernando A. Neiva**
**v.**
**All Defendants**

96. The Plaintiff repeats and reavers paragraphs one through ninety-five of this Complaint as

if expressly rewritten and set forth herein.

97. Defendants, by their negligent conduct, caused Plaintiff to suffer emotional distress.

98. As a direct and proximate result of the Defendants' negligent conduct, Plaintiff was

caused to sustain severe physical injuries and emotional distress, which he was

hospitalized for, and continues to suffer great pain of body and mind, incurred and will

continue to incur expenses for medical treatment and care and was prevented from

engaging in his usual activities and was otherwise damaged.

WHEREFORE, the Plaintiff demands a judgment and decree voiding the purported subject

foreclosure action and enter judgment against Defendants in an amount sufficient and

reasonable to adequately compensate Plaintiff for the damages that he has incurred, plus interest, costs, and reasonable attorneys' fees.

WHEREFORE, the Plaintiff respectfully prays that this Honorable Court enter an Order that:

1. Declaring that the Defendants lacked statutory authority to foreclose on the subject residence and that the January 11, 2023 foreclosure is declared to be a legal nullity;

2. Declaring that the Defendants failed to act in good faith and use reasonable diligence to protect the Plaintiff's equity; therefore, the January 11, 2023 foreclosure is declared a legal nullity;

3. The foreclosure auction and sale of the Debtor's residence be avoided pursuant to 11 U.S.C. §§ 522(h) and 549(a), or 11 U.S.C. § 548;

4. Declare the foreclosure voided;

5. Decrees that Defendant Loancare, LLC is enjoined from enforcing its lien and transferring the subject premises by deed or otherwise, to the high bidder, or any other individual or entity;

6. Defendants take all necessary steps to reflect the avoidance of the sale within thirty days of the entry of the Order to restore title to the Plaintiff;

7. The transfer be preserved for the benefit of the Debtor; and that the Debtor's interest in the property is property of his estate that is exempt property pursuant to Mass. Gen. Laws Ch. 188 § 1;

8. Award Debtor damages in an amount that the Court determines;

9. Award Debtor's costs;

10. Award Debtor's reasonable attorney's fees;

11. Grant any other relief, which this Court deems necessary and proper pursuant to 11

U.S.C. § 105.

## **VERIFICATION**

I, Fernando Neiva, am of lawful age and swear under the pains and penalties of perjury that I am the above named Plaintiff and that I have read the foregoing complaint and know the contents thereof and that the material facts therein set forth are all the material facts known to me, and are true, except for those facts set forth that are based on information and belief.

**Fernando Neiva**

*Signed and dated this* 4th *day of* MAY *, 2023.*

Respectfully submitted,

The Debtor/Plaintiff,
Fernando Neiva

By his attorneys,

/s/ Richard S. Ravosa
Richard S. Ravosa, Esquire
BBO No. 635846
massachusettsbankruptcycenter@gmail.com
Matthew M. Hamel, Esquire
BBO No. 697773
mhamel@ravosalaw.com
Massachusetts Bankruptcy Center
300 Commercial Street, Suite 2
Boston, MA 02109
(617) 720-1101 tel
(617) 720-1104 fax