# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
|  | ) | Case No. 23-40098-EDK |
| FERNANDO A. NEIVA, | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |
| FERNANDO A. NEIVA, | ) | Adversary Proceeding |
|  | ) | No. 23-4015 |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| LOANCARE, LLC, PATRIOT | ) |  |
| AUCTIONEERS, LLC, SULLIVAN | ) |  |
| & SULLIVAN AUCTIONEERS, | ) |  |
| LLC, DAVID H. WELLONS, AND | ) |  |
| JOHN DOES #1-#19, | ) |  |
|  | ) |  |
| Defendants | ) |  |
|  | ) |  |

## <u>MEMORANDUM OF DECISION</u>

Before the Court are cross-motions for partial summary judgment filed by Fernando A. Neiva, the plaintiff in this adversary proceeding and debtor in the underlying Chapter 13 bankruptcy case (the "Debtor"), and defendants Loancare, LLC ("Loancare") and David H. Wellons ("Wellons") (together, the "Defendants"). Resolution of the motions requires the Court to determine whether the transfer of the Debtor's equity of redemption through a prepetition foreclosure sale of the Debtor's property is avoidable pursuant to § 544 of the United States

Bankruptcy Code (the "Bankruptcy Code" or the "Code"),[1] whether the Debtor has standing under § 522 of the Code to seek avoidance of the transfer, and, if avoidance is warranted in this case, the appropriate remedy to be fashioned.

## I.    FACTS AND TRAVEL OF THE CASE

The facts material to the issues currently before the Court are relatively few and very straightforward.  In August 2014, the Debtor executed a note and mortgage related to the Debtor's purchase of real property located at 45 Liberty Street in Marlborough, MA (the "Property").  On January 11, 2023, Loancare, the holder of the mortgage by assignment, conducted a foreclosure sale of the Property (the "foreclosure sale"), at which Wellons was the high bidder.  No foreclosure deed or other post-foreclosure documents related to the foreclosure sale were recorded at the appropriate registry of deeds (the "Registry") as of February 2, 2023, when the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code.

On May 4, 2023, the Debtor commenced the current adversary proceeding and, shortly thereafter, filed an amended complaint adding Wellons as a defendant (the "complaint").  The complaint raises a variety of claims against multiple defendants related to the foreclosure sale.  Some of the claims and defendants have been dismissed and some of the remaining claims are not presently before the Court.  Currently for disposition are the parties' cross-motions for summary judgment as to Count I of the complaint, through which the Debtor seeks avoidance of the foreclosure sale pursuant to § 544(a)(3) of the Bankruptcy Code.[2]

---

[1] *See* 11 U.S.C. §§ 101 *et seq.*  All statutory references are to provisions of the Bankruptcy Code unless otherwise indicated.

[2] In the main case, the Debtor's amended Chapter 13 plan contemplates a sale of the Property to satisfy the mortgage debt within 6 months following a ruling favorable to the Debtor in this adversary proceeding.

II.    POSITIONS OF THE PARTIES

**A.  Jurisdiction, Core vs. Non-Core Proceeding, and Abstention**

At the outset, the Defendants argue that "the Court does not have jurisdiction to hear" Count I of the complaint, because the claim is not within this Court's core jurisdiction.  Defs. Summ. J. Mot. 4, Oct. 30, 2023, ECF No. 53.  According to the Defendants, the Debtor is attempting to adjudicate rights arising under state law that the Debtor held when the case was commenced and thus, pointing to *Frazier v. Residential Funding Corp. (In re Frazier)*, Bankr. No. 06–11764–RS, Adv. No. 06–1295, 2006 WL 2715145 (Bankr. D. Mass. Sept. 21, 2006), they say that this Court cannot decide this matter as a core proceeding.  Alternatively, the Defendants ask the Court to exercise discretionary abstention in favor of the state courts under 28 U.S.C. § 1334(c)(1).

The Debtor argues first that, even if the matter were non-core, this Court would still have jurisdiction to hear it, although the Court would be required to submit findings of fact and rulings of law to the district court and would not be able to enter a final order.  More importantly, the Debtor maintains that the claims do not arise under state law, but instead are created entirely by the Bankruptcy Code and are not cognizable in a nonbankruptcy forum.  Accordingly, the Debtor maintains that this Court has jurisdiction over the matter, this Court has the authority to enter final orders and judgment as to Count I, and abstention would be inappropriate.

**B.  Avoidability of the Transfer**

Count I of the Debtor's complaint seeks avoidance of the foreclosure of the Debtor's equity of redemption pursuant to § 544(a)(3), which, in essence, permits a trustee to avoid a prepetition transfer of a debtor's property if that transfer is not perfected in accordance with applicable state

---

Neither Loancare nor Wellons objected to confirmation of the amended Chapter 13 plan and the plan was confirmed on November 27, 2023.

law.  Relying on *Weiss v. U.S. Bank, N.A. (In re Mularski)*, 565 B.R. 203 (Bankr. D. Mass. 2017), the Debtor argues that since (1) the equity of redemption is an interest in real property, (2) that property interest was transferred prepetition through the foreclosure sale, and (3) there was nothing on record to perfect that transfer vis-à-vis a bona fide purchaser as of the date of the bankruptcy filing, then the foreclosure of the equity of redemption is avoidable under § 544(a)(3).

Although the language of the statute, "any transfer of property of the debtor" does not require that the debtor initiate the transfer for purposes of § 544(a), the Defendants briefly argue that the foreclosure of the Debtor's equity of redemption may not be avoided under § 544(a)(3) because the only transfer of property that the Debtor made was in the granting of original mortgage. The Defendants also point to various cases where courts have held that when a foreclosure sale has occurred and a memorandum of sale is signed prepetition, the Debtor no longer has the equity of redemption and the property is not property of the bankruptcy estate.  Citing to *Cerrato v. BAC Home Loans Servicing (In re Cerrato)*, 504 B.R. 23, 29 (Bankr. E.D.N.Y. 2014), the Defendants say the debtor in that case could not avoid a foreclosure sale under § 544 because the right to redeem was cut off at the time of the foreclosure sale, despite the fact that a foreclosure deed was not recorded.

Furthermore, the Defendants argue that the transfer is not avoidable due to the pre-foreclosure recording of a Servicemembers Civil Relief Act judgment and an "Affidavit Pursuant to M.G.L. Ch. 244 §§ 35B and 35C."  Defs. Summ. J. Mot. Exs. A, B.  Citing to *Munoz v. James B. Nutter & Co. (In re Munoz)*, Bankr. No. 10–31627–hcm, Adv. No. 10–3039–hcm, 2011 WL 710501 (Bankr. W.D. Tex. Feb. 22, 2011), the Defendants maintain that the unsatisfied mortgage of record, together with the pre-foreclosure documents of record, subject a bona fide purchaser to inquiry notice, which would have revealed the foreclosure sale.

4

### C.  The Debtor's Standing under § 522(h)

The Debtor argues that, notwithstanding the Court's prior decision that Chapter 13 debtors lack direct standing to bring actions under § 544 of the Bankruptcy Code, *see Kalesnik v. HSBC Bank USA, Nat'l Ass'n (In re Kalesnik)*, 571 B.R. 491, 498 (Bankr. D. Mass. 2017), the Debtor here has standing to bring an avoidance action under § 544 by way of § 522(h), because, as required by § 522(h), the transfer is avoidable by the trustee, but the trustee has not attempted to avoid it, and the Debtor could have exempted the property under subsection (g)(1) if the trustee had avoided the transfer.  The Debtor maintains that the conditions for exempting the property under subsection (g)(1) are satisfied because, in accordance with that subsection, the Debtor could have exempted the property if it had not been transferred, the transfer was not voluntary, and the Debtor did not conceal the property.

In response, the Defendants first argue that § 522(h) is not available to the Debtor because, for the reasons discussed above, the transfer is not avoidable under § 544(a)(3).  In addition, the Defendants say that the case relied upon by the Debtor, *Giacchetti v. Everhome Mortgage (In re Giacchetti)*, 584 B.R. 441 (Bankr. D. Mass. 2018), is not binding on this Court, fails to fully analyze pertinent legal issues, and is distinguishable.  Further, relying on case law from other districts, the Defendants contend that the Debtor cannot exercise the trustee's avoidance powers in this case, because the consequence of the avoidance will solely benefit the Debtor and will be of no benefit to the creditors or the bankruptcy estate.

The Debtor counters that the cases raised by the Defendants are not binding on this Court and says that the Supreme Court acknowledged the ability of debtors to avoid a foreclosure sale by way of § 522(h) in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541 n.7 (1994).  The Debtor further argues that to require a benefit to creditors, and not to the debtor, in order to allow a debtor

to avoid a transfer using § 522(h) would render § 522(h) useless and is in direct contravention of explicit provisions of the Bankruptcy Code.

The Defendants also claim that "[t]o avoid the foreclosure sale under 11 U.S.C. § 522(h), [the Debtor] must establish that the Property at issue is property of the bankruptcy estate, since only property of the estate can be exempted by a debtor." Defs. Reply Br. 1, Dec. 4, 2023, ECF No. 60. That is, the Defendants maintain that Debtor is not entitled to exempt the Property under applicable state law because legal title to the Property was transferred through the foreclosure sale and the Debtor no longer owns the Property. Accordingly, the Defendants contend that the Debtor cannot exempt the Property as required by § 522(h).

The Debtor points out that no objection to the Debtor's claimed exemption in the Property was timely-filed in the main case. Furthermore, the Debtor argues, § 522(g)(1) allows a debtor to exempt property as if the transfer never occurred, so the fact that the Debtor does not currently own the Property is irrelevant.

Finally, the Defendants assert that the requirement in § 522(g)(1) that the transfer be involuntary is not satisfied, because Loancare "did not force the Debtor into foreclosure," there was no coercion or misrepresentation, the Debtor executed the mortgage voluntarily "and voluntarily decided not to pay the mortgage," and the Debtor chose not to redeem the property prior to the foreclosure sale. Defs. Summ. J. Mot. 13.

In rebuttal, the Debtor notes that only a mortgagee holds the statutory power of sale to foreclose, and the Debtor did not choose the time or manner of foreclosure, did not file a Servicemembers Civil Relief Act action against himself, did not advertise the foreclosure sale, and had no role in the foreclosure conducted by Loancare. Accordingly, the Debtor maintains, "a

6

foreclosure of his equity of redemption is, by its very nature, an involuntary transfer." Debtor Obj.

9, Nov. 20, 2023, ECF No. 58.

### D.  The Effect of § 1322(c)(1), the "Gavel Rule," and Public Policy

In addition to their arguments under §§ 522(h) and 544(a)(3), the Defendants emphasize

§ 1322(c)(1) and state that at issue in this case "is whether [the Debtor's] equitable right of

redemption was part of the bankruptcy estate" when the bankruptcy case was commenced. Defs.

Reply 2.  According to the Defendants, § 1322(c)(1) "specifically addresses when an equitable

right of redemption, or right to cure, becomes property of the estate." *Id.*  They argue that, under

established case law, a foreclosure sale conducted in accordance with state law cuts off a Debtor's

"right to cure" under § 1322 and that the foreclosure sale is considered complete when the gavel

falls – the so-called "gavel rule."  The Defendants say that allowing debtors to avoid foreclosure

actions under the Bankruptcy Code would violate public policy, because it would be an affront to

the certainty and predictability of the "gavel rule," would "open a proverbial flood gate of

litigation," would burden the Court, would delay resolution of cases, and may have a chilling effect

on foreclosure bidding.  Defs. Summ. J. Mot. 14, 15.

The Debtor says that the relief sought by the Debtor does not conflict with existing case

law or public policy.  First, the Debtor notes that the Debtor's success in the adversary proceeding

would not undermine the "gavel rule" – in fact, the Debtor agrees that the foreclosure sale was

"completed upon the fall of the gavel."  Debtor Obj. 13.  The Debtor argues, however, that

notwithstanding the completed transfer of the equity of redemption under state law, the Debtor

may now avoid that transfer using remedies afforded by the Bankruptcy Code.  In response to the

Defendants' "public policy" arguments, the Debtor notes that the "flood of litigation" the

Defendants foresee could be avoided by prompt recording of foreclosure documents.  Furthermore,

the Debtor argues that public policy arguments cannot be used to contradict plain statutory language, "because statutes *are* public policy." *Id*.

### E.  Recovery under § 550

In the complaint, under Count I, the Debtor initially requested "a judgment in the amount of $426,817.00 against the Defendants, jointly and severally, plus interest, costs, and reasonable attorneys' fees."  Am. Compl. 10, June 2, 2023, ECF No. 14.  At the conclusion of the complaint, however, the Debtor requested an "Order" that, *inter alia*, "[t]he foreclosure auction and sale of the [Debtor's] residence be avoided pursuant to 11 U.S.C. §§ 522(h) and 544(a) . . . ," and "[t]he transfer be preserved for the benefit of the [Debtor]; and that the [Debtor's] interest in the property is property of his estate that is exempt property . . . ." *Id.* at 21.  In the Debtor's motion for summary judgment, the Debtor asserts that the Debtor is "entitled to recover the transfer or its value from Defendant Loancare, LLC and from Defendant David H. Wellons (subject to the single satisfaction limitation)."  Debtor Summ. J. Mot. 12, Oct. 30, 2023, ECF. No. 52.  The Debtor then requests that the Court enter a judgment "[a]voiding the transfer of the [Debtor's] equity of redemption in the mortgage currently held by Defendant Loancare, LLC . . .; (2) [f]inding Defendant Loancare, LLC and Defendant David H. Wellons liable under 11 U.S.C. § 550; [and] (3) [o]rdering Defendant Loancare, LLC and Defendant David H. Wellons, to either pay the Plaintiff the value of the transferred property; or take any and all steps necessary to dissolve the memorandum of sale and ensure that the equity of redemption is returned to the [Debtor] . . . ." *Id.*

The Defendants argue that, because the Debtor failed to request relief pursuant to § 550 in the complaint, any relief under that section should be denied.  Furthermore, according to the Defendants, Wellons bought the Property in good faith and without any knowledge of issues with the foreclosure sale, and thus can rely on "§550(2) [sic]" as a defense.  Defs. Joint Reply Mem. 6,

Nov. 20, 2023, ECF No. 59.  Finally, the Defendants say that the Debtor cannot recover against

both Defendants because, under § 550(d), recovery is limited to a single satisfaction – either from

the initial transferee or from an immediate or mediate transferee of the initial transferee.  And the

Defendants say that Debtor cannot recover under § 550(a) because transfers can only be recovered

under that section for the benefit of the estate.

The Debtor has not addressed the Defendants' arguments regarding the failure of the

Debtor to cite to § 550 in the complaint or regarding Wellons's good faith defense under § 550.

The Debtor does, however, note that, pursuant to § 522(i)(1), a debtor is specifically permitted a

recovery under § 550 if a transfer is avoided under § 522(h) and, that, notwithstanding § 551, a

transfer avoided under § 522(h) also may be preserved for the benefit of the debtor pursuant to

§ 522(i)(2).


III.   <u>DISCUSSION</u>

**A.  Jurisdiction, Authority to Enter Final Orders, and Discretionary Abstention**

28 U.S.C. § 1334(b) imbues the district court with jurisdiction over "all civil proceedings

arising under title 11, or arising in or related to cases under title 11," and 28 U.S.C. § 157(a) permits

the district court to "refer any or all such proceedings to the bankruptcy judges of their district,"

*Stern v. Marshall*, 564 U.S. 462, 473 (2011), which the District Court of Massachusetts has done,

*see* D. Mass. Rule 201.  This Court thus has jurisdiction over all matters arising under, arising in,

or related to a bankruptcy case, although it may only enter final orders on those matters which are

determined to be "core," *see* 28 U.S.C. § 157(b)(1), and must submit proposed findings of fact and

conclusions of law to the district court for any "non-core" matter, unless the parties consent to the

entry of a final order by the bankruptcy court, *see* 28 U.S.C. § 157(c)(1), (2).

Proceedings that "arise under" the Bankruptcy Code are core proceedings. *See* 28 U.S.C. 157(b)(1). "[P]roceedings 'aris[e] under title 11' when the Bankruptcy Code itself creates the cause of action." *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 (1st Cir. 2017). Here, the adjudication of the rights and powers asserted by the Debtor under §§ 522(h) and 544(a) of the Bankruptcy Code are unquestionably within the Court's core jurisdiction because those rights and powers are created by the Bankruptcy Code and "would not exist outside of bankruptcy." *Murphy v. Felice (In re Felice)*, 480 B.R. 401, 410 (Bankr. D. Mass. 2012); *see also Miller v. Johnson (In re Miller)*, 626 B.R. 503, 512 (Bankr. S.D. Ohio 2021) (avoidance powers under § 544(a) are "unique to the Bankruptcy Code" and are "limited to bankruptcy cases"); *Giacchetti v. Everhome Mortg. (In re Giacchetti)*, 584 B.R. 441, 447 (Bankr. D. Mass. 2018) (avoidance power under § 544 "could not have been raised in the state court"). While the Defendants are correct that state law will have some bearing on the issues raised in this case (to be discussed more thoroughly below), "[t]he fact that Massachusetts law will decide the outcome is not dispositive of whether the proceeding is core or non-core." *Felice*, 480 B.R. at 410. What *is* determinative is the fact that the avoidance power sought to be exercised by the Debtor is not created by state law and has no existence outside of the Bankruptcy Code. And because the claim raised in Count I stems from the Bankruptcy Code itself, this Court also has the constitutional authority to decide the matter. *See Stern*, 564 U.S. at 499 (in determining the bankruptcy court's constitutional authority to enter a final order, "*the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process*") (emphasis in original); *see also Felice*, 480 B.R. at 417-18 (bankruptcy court had constitutional authority to enter final orders on matter stemming from the bankruptcy). Accordingly, not only does this Court have the authority to enter final orders and judgment as to Count I of the complaint, but, given the absence of any cognizable

state law claims raised in Count I, discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) would be inappropriate. *See, e.g., Cox v. Cox (In re Cox)*, 247 B.R. 556, 570 (Bankr. D. Mass. 2000) (discretionary abstention was inappropriate where, *inter alia*, there were no state law issues remaining to be determined).

### B.  Summary Judgment Standard

Summary judgment as to a particular claim should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056. Here, the facts material to Count I of the complaint are not in dispute.  Therefore, this Court must determine whether either party "has successfully demonstrated an entitlement to judgment as a matter of law." *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994).

### C.  Avoidability of the Transfer under § 544(a)(3)

Section 544(a)(3) allows a bankruptcy trustee to avoid a transfer of a debtor's interest in real property "to the extent the transfer could have been avoided by a bona fide purchaser under state law." *Weiss v. U.S. Bank, N.A. (In re Mularski)*, 565 B.R. 203, 205 (Bankr. D. Mass. 2017). That is, the "transfer of an interest in the debtor's real property must be so far perfected as to be effective against a bona fide purchaser of that real estate from the debtor under nonbankruptcy law," failing which the transfer may be avoided under § 544(a)(3). *Id.* (quoting Ginsberg & Martin on Bankruptcy, § 9.01 (Westlaw 2016)).  In turn, the "rights and powers" of a bona fide purchaser and the issue of whether a transfer has been properly perfected are determined by reference to applicable state law. *See, e.g., Baldiga v. Golemo (In re Golemo)*, 494 B.R. 588, 592 (Bankr. D. Mass. 2013) ("the 'rights and powers' of the bona fide purchaser contemplated by § 544(a)(3) are defined by state law").

The Defendants' assertion that "[b]efore considering the analysis under § 544(a)(3), the Court must determine whether the property is property of the estate in order for the Trustee to have avoiding powers," Defs. Summ. J. Mot. 11, is simply incorrect.

> [The fact that] the property was not included in [the] bankruptcy estate . . . is beside the point. . . . [T]his adversary proceeding is about the power of a bankruptcy trustee under § 544 to avoid prepetition transfers of a debtor's property which necessarily means property in which the debtor has no "legal or equitable interests . . . as of the commencement of the case" (and therefore does not become estate property under 11 U.S.C. § 541(a)(1)).  Such property may be *brought back* into the estate through transfer avoidance.

*Mularski*, 565 B.R. at 208-09 (emphasis in original).

In all material respects regarding the § 544(a)(3) analysis, this case is identical to the *Mularski* case, where the court held that a prepetition foreclosure of the debtor's equity of redemption was avoidable by a Chapter 7 trustee pursuant to § 544(a)(3), as no documents evidencing the foreclosure were filed in the relevant registry of deeds at the time the bankruptcy case was commenced.  565 B.R. 203.  In *Mularski*, the court noted that "[a] mortgagor's equity of redemption is 'regarded as an estate,' under Massachusetts law" (i.e., it is an interest in real property), and the foreclosure of the equity of redemption "effected a 'transfer of property of the debtor'" under § 544.  *Id.* at 207.[3]  Since "Massachusetts law is clear that a conveyance of an interest in real property must be evidenced by a recording at the relevant registry of deeds in order to be effective against third parties," and "because no documents on record at the registry of deeds indicated that [the debtor's] interest in the [ ] property  (i.e., the equity of redemption) had been transferred . . . , that transfer . . . . may be avoidable by virtue of § 544(a)(3)."  *Id.* at 207, 208.

---

[3] *See also* 11 U.S.C. § 101(54)(C) ("The term 'transfer' means – . . . (C) the foreclosure of a debtor's equity of redemption . . . .")

The Defendants have directed the Court's attention to cases where debtors' attempts to avoid foreclosure actions under § 544(a)(3) were unsuccessful notwithstanding the fact that a foreclosure deed had not been recorded prepetition, citing *Cerrato v. BAC Home Loans Servicing (In re Cerrato)*, 504 B.R. 23 (Bankr. E.D.N.Y. 2014), and *Munoz v. James B. Nutter & Co. (In re Munoz)*, Bankr. No. 10-31627-hcm, Adv. No. 10-3039-hcm, 2011 WL 710501 (Bankr. W.D. Tex. Feb. 22, 2011). In both of those cases, the courts held that pre-foreclosure documents of record were sufficient to put a bona fide purchaser on *inquiry* notice – i.e., under applicable state law in New York and Texas, respectively, prospective purchasers would have had a duty to inquire as to whether a foreclosure sale had occurred. *See Cerrato*, 504 B.R. at 33;[4] *Munoz*, 2011 WL 710501 at *9. In contrast to New York and Texas law, however, "Massachusetts law does not charge bona fide purchasers with inquiry notice of matters not on record." *Mularski*, 565 B.R. at 208. While the pre-foreclosure documents on record at the Registry in this case certainly indicated that a foreclosure sale was in prospect, those pre-foreclosure documents obviously did not, and could not, evidence that the foreclosure sale had *actually* occurred. Accordingly, the pre-foreclosure documents of record did not put prospective purchasers on notice of the transfer of the Debtor's equity of redemption, as a bona fide purchaser would have had no duty under Massachusetts law to inquire as to whether the foreclosure sale had occurred. *Id.*[5]

---

[4]  As previously discussed, the Defendants say that the court in the *Cerrato* case held that the debtor could not avoid a foreclosure sale under § 544 because the right to redeem was cut off prepetition through the foreclosure sale. That is not correct. The *Cerrato* court ruled that the debtor could not avoid the foreclosure sale under § 544 because the sale could not have been avoided by a bona fide purchaser under relevant New York law, as required by § 544(a)(3). 504 B.R. at 33.

[5]  Throughout their various arguments, both the Debtor and the Defendants tend to focus on the lack of a recorded foreclosure deed at the Registry. However, the Massachusetts District Court recently ruled that a recorded affidavit of sale was sufficient to provide constructive notice to third parties of the transfer of the debtor's equity of redemption through a foreclosure sale. *See Tran v. Citizens Bank N.A.*, -- B.R. --, 2024 WL 249387, *10 (D. Mass. Jan. 23, 2024). But in this case, as in *Mularski*, "because *none* of the foreclosure documents were recorded before the filing of the bankruptcy petition, I need not decide *what* documents

In short, this Court agrees with the analysis and the holding set forth by the court in *Mularski* and rules that (1) the foreclosure of the Debtor's equity of redemption was a transfer of property of the Debtor, (2) that transfer was not evidenced by a recording at the Registry as required to be effective against third parties under Massachusetts law, and (3) the transfer is therefore avoidable by a trustee in bankruptcy pursuant to 11 U.S.C. § 544(a)(3). *See Mularski*, 565 B.R. 203.

### D.  Application of § 522(h)

In *Kalesnik v. HSBC Bank USA, National Association (In re Kalesnik)*, this Court ruled that a Chapter 13 debtor does not have "direct" standing to exercise a trustee's avoidance powers under, *inter alia*, § 544 of the Bankruptcy Code "outside of the narrow confines of § 522(h)," which this Court held did not apply under the facts of that case. 571 B.R. 491, 496 n.4, 498 (Bankr. D. Mass. 2017).  Section 522(h) provides, in relevant part:

> The debtor may avoid a transfer of property of the debtor . . . to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if –
>
> (1)      such transfer is avoidable by the trustee under section 544 . . . of this title; and
>
> (2)      the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).  Section 522(g)(1), in turn, provides that a debtor may exempt property recovered by a trustee through an avoidance action, "to the extent that the debtor could have exempted such property . . . if such property had not been transferred, if – (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and (B) the debtor did not conceal such property." 11 U.S.C. § 522(g)(1).  In sum, § 522(h), read together with § 522(g)(1),

---

must be on record to perfect the transfer of an equity of redemption vis-à-vis third parties."  565 B.R. at 208 n.2 (emphasis in original).

permits a Chapter 13 debtor to bring an avoidance action if (1) the trustee could have brought such an action; (2) the trustee did not bring the action; (3) the transfer was involuntary and the debtor did not conceal the property . . . ; and (4) the debtor could have exempted such property had the trustee actually avoided the transfer.

*Callanan v. Int'l Fidelity Ins. Co. (In re Callanan)*, 190 B.R. 137, 139 (Bankr. D. Mass. 1995).

In circumstances nearly identical to those in the present case, the court in *In re Giacchetti* ruled that a Chapter 13 debtor had standing under § 522(h) to seek the avoidance of a prepetition foreclosure sale pursuant § 544(a)(3), because the foreclosure of the debtor's equity of redemption was an involuntary transfer, the foreclosure deed was not recorded prior to the filing of the bankruptcy case, the debtor had not concealed her interest in the property, and the property was claimed as exempt pursuant to the state homestead exemption.  584 B.R. at 447-48.  While not binding on this Court, the Court finds the *Giacchetti* holding exceedingly persuasive and directly on point.

The Defendants appear to largely take issue with the *Giacchetti* analysis because, they say, it fails to consider case law from other circuits and districts that (according to the Defendants) stand for the proposition that a debtor may not personally benefit from an avoidance action and avoidance powers are limited only to circumstances where the benefits of avoidance would enure to the creditors.  However, after reviewing the cases cited by the Defendants, this Court concludes that they do not stand for the proposition that debtors may not "benefit" from actions brought pursuant to § 522(h).

For instance, in the case of *Hansen v. Green Tree Servicing, LLC (In re Hansen)*, cited by the Defendants, the court, in determining whether debtors have the authority to bring an avoidance action *outside* the limited circumstances of § 522(h), stated that a "practical consideration" for determining that debtors do not have such authority was the fact that "there is no justification for a Chapter 13 debtor to have avoidance powers because future income, not proceeds of an avoidance

action, funds a debtor's Chapter 13 plan" and "the debtor has no duty to maximize recovery for

unsecured creditors. In short, the avoidance powers are not designed to protect the debtor." 332

B.R. 8, 13 (B.A.P. 10th Cir. 2005). Those observations are simply not relevant to the issue at

hand, as this Court has already determined that debtors lack direct standing to bring an action under

§ 544(a)(3). *See Kalesnik*, 571 B.R. at 498. Moreover, the fact that the language quoted above

(and cited by the Defendants) is irrelevant to § 522(h) is highlighted by the fact that the *Hansen*

court specifically recognized that, in contrast to a "direct" action under § 544, "[s]ection 522(h)

expressly authorizes Chapter 13 debtors to exercise powers conferred by § 544 to avoid

involuntary transfers of *exempt property*." *Id.* (emphasis supplied).[6]

The Defendants' reliance on *Nealy v. Ivy Holdings, LLC (In re Nealy)*, 623 B.R. 278

(Bankr. D.N.J. 2020) is similarly misplaced. In *Nealy*, the court took issue with the debtor's

apparent attempt to seek relief beyond that provided in § 522(h). *Id.* at 284. Acknowledging case

law in the Third Circuit holding that "a transfer may only be avoided if it benefits the estate," the

*Nealy* court went on to note:

> [t]his Court does not interpret the line of cases requiring a benefit to creditors to
> mean that a debtor can never bring an avoidance action where a trustee has opted
> not to do so for the benefit of creditors. Indeed, the ability of a debtor to avoid a
> transfer reflects the entire purpose of the rights provided to a debtor under 11 U.S.C.
> § 522(h). A debtor must, however, tailor the relief sought in an action brought
> under 11 U.S.C. § 522(h) to comport with the limitations prescribed by statute –
> *meaning that a Debtor can only recover to the extent of any valid exemptions*.

*Id.* at 283-284 (emphasis supplied). In fact, the *Nealy* case stands for the opposite proposition than

that cited by the Defendants (that Chapter 13 debtors cannot bring an avoidance action unless the

avoidance will benefit creditors and not the debtor) – the *Nealy* court expressly stated that "the

---

[6] Ultimately, the *Hansen* court ruled that the debtors lacked standing under § 522(h) to avoid the transfer,
because the transfer sought to be avoided (the granting of a consensual security interest in a mobile home),
was a voluntary transfer. *Hansen*, 332 B.R. at 13.

Debtor may be successful under § 522(h) in recovering the value of her exemptions." *Id.* at 285. Moreover, the additional cases on which the Defendants rely, *The Majestic Star Casino, LLC v. Barden Development, Inc. (In re The Majestic Star Casino)*, 716 F.3d 736 (3d Cir. 2013), and *The Official Committee of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237 (3d Cir. 2000), involved Chapter 11 debtors seeking avoidance of transfers using direct standing under the applicable Chapter 5 avoidance provisions. The Third Circuit held in those cases that a debtor's ability to exercise avoidance powers was limited "to circumstances in which such actions would in fact benefit the creditors, not the debtors themselves." *Majestic Star*, 716 F.3d at 761 n.26 (quoting *Cybergenics Corp.*, 226 F.3d at 244). However, the Third Circuit distinguished those cases from the individual debtor context in *In re Messina*, where the court noted that "a debtor may benefit from an avoidance if he files an exemption, pursuant to 11 U.S.C. § 522(g)." 687 F.3d 74, 83 (3d Cir. 2012).

In short, there is no requirement in the Bankruptcy Code or under the cases cited by the Defendants that an avoidance action brought by an individual debtor pursuant to the authority granted under § 522(h) be brought for the benefit of the debtor's creditors. Instead, the opposite is true – a debtor may *only* exercise the avoidance powers under § 522(h) "where, by exercise of the avoidance power, the debtor would recover an asset that he or she can claim as exempt." *Piper v. United States*, 291 B.R. 20, 23 (Bankr. D. Mass. 2003); *see also Beaulieu v. The CIT Group Sales/Fin., Inc. (In re Beaulieu)*, No. EP 99-004, 2001 WL 36384162, *5 (B.A.P. 1st Cir. Sept. 7, 2001) ("The . . . limitation in § 522(h) requires us to find that the Debtors would be entitled to claim an exemption in the [property] under § 522(g)(1) before they can utilize their avoidance powers.").

The Defendants also assert that the Debtor cannot claim an exemption in the Property since the Property is not property of the bankruptcy estate owing to the prepetition foreclosure and "only property of the estate can be exempted by a Debtor." Def. Reply 1. This assertion, however, ignores the plain language of § 522(g)(1), which requires only that a debtor establish that the debtor "*could have* exempted such property under subsection (b) of this section *if such property had not been transferred.*" 11 U.S.C. § 522(g) (emphasis supplied). As one court has explained:

> It is a general rule of bankruptcy law that a debtor's right to exempt property is determined by the facts and the law as they exist on the date of the filing of the bankruptcy petition. This rule prevents a debtor from exempting any property in which the debtor does not have an interest on the date of the filing of his bankruptcy petition. *Section 522(g)(1) creates an exception to this rule* and allows a debtor to exempt property recovered by the trustee if the debtor could have exempted such property under [§ 522(b)] if such property had not been transferred. This language effectively places the debtor in the position he would have been in had the transfer never occurred, *and allows the debtor to exempt property that he otherwise could not*.

> Taking the statutory language in context, it is apparent that the term could have refers to the hypothetical cases where an avoidable transfer is presumed not to have occurred as of the date of the filing of the debtor's bankruptcy petition so that a debtor may claim the property as exempt.

*Salaymeh v. Plaza Centro LLC (In re Salaymeh)*, 361 B.R. 822, 829 (Bankr. S.D. Tex. 2007) (emphasis supplied); *see also Funches v. Household Fin. Consumer Disc. Co. (In re Funches)*, 381 B.R. 471, 491 (Bankr. E.D. Pa. 2008) (§ 522(h) "promote[s] the goals of the statutory exemption provisions by providing the debtor with a means – subject to certain limitations – of . . . independently exercising Code remedies for recovery of property that was transferred prepetition *and then exempting the recovered property*") (emphasis supplied).

The fact that the Property was not property of the bankruptcy estate at the time of filing is immaterial – rather, the question is: *had the transfer not occurred*, would the Debtor be entitled to exempt the Property? Here, the answer is yes; there has been no objection to the Debtor's claim

of exemption in the Property on any substantive ground in the Debtor's main case, and no additional objection to the claimed exemption has been raised here. Accordingly, the Court rules that the Debtor "could have exempted [the Property] under [§ 522(b)] *if such property had not been transferred*," as required by 11 U.S.C. § 522(g) (emphasis supplied).

The Defendants further attempt to persuade the Court that the requirement of § 522(g)(1) (that the transfer was not a voluntary transfer) has not been met, since "[t]here was no coercion or misrepresentation," "[t]he Debtor took out the mortgage voluntarily and voluntarily decided not to pay the mortgage," and the Debtor had notice of the foreclosure sale but chose not to redeem the Property or bid at the foreclosure sale. Defs. Summ. J. Mot. 13. The Defendants also make the rather incredulous claim that "the Creditor did not force the Debtor into foreclosure." *Id.* While in some cases, courts have examined the existence of "fraud, material misrepresentation or coercion" in determining whether a transfer was made voluntarily or involuntarily, *Shawhan v. Shawhan (In re Shawhan)*, Nos. NV-08-1049-JuKuK, NV-08-1052-JuKuL, 04-10196, 2008 WL 8462964, *10 (B.A.P. 9th Cir. July 7, 2008) (quoting *Rodriguez v. Dorine's Bail Bonds, Inc. (In re Rodriguez)*, 361 B.R. 887, 892-93 (Bankr. D. Ariz. 2007)), such an inquiry is only relevant when an apparently voluntarily transfer is claimed to have been involuntary. For instance, in the *Shawhan* case, the debtor argued that a property settlement stipulated to by the debtor was "involuntary." *Id.* The *Shawhan* court noted that in some cases, a court may be tasked with determining whether fraud, material misrepresentations, or coercion played a role in the transfer. *Id.* In such circumstances, a voluntary transfer may be found to have occurred "when a debtor has knowledge of all essential facts and is free from the persuasive influence of another." *Id.* (quoting *Ross. v. Phila. Hous. Auth. (In re Ross)*, Bankr. No. 97–10870DWS, Adv, No. 97–0063, 1997 WL 331830 at *3 (Bankr. E.D. Pa. June 10, 1997)). However, that inquiry is necessarily geared toward

19

determining whether the Debtor has "cho[sen] *of his own free will* to transfer property to the creditor." *Id.* (emphasis supplied).

A foreclosure sale, by its very nature, is an involuntary transfer of a debtor's equity of redemption. Whatever the Debtor's responsibility for failing to make mortgage payments (giving rise to Loancare's right to foreclose) may be, the Debtor did not choose of his own free will to transfer the equity of redemption through the foreclosure process. Accordingly, the Court rules that the transfer of the Debtor's equity of redemption through the foreclosure sale "was not a voluntary transfer of such property by the debtor" within the meaning of § 522(g)(1).

The Debtor has thus established that (1) a trustee could have brought an action to avoid the transfer of the Debtor's equity of redemption pursuant to § 544(a)(3), (2) the trustee did not bring the action, (3) the transfer was involuntary, (4) the Debtor did not conceal the Property, and (5) the Debtor could have exempted the Property if the trustee had actually avoided the transfer. Having established each of those required elements, the Court rules that the transfer is avoidable by the Debtor pursuant to § 522(h) of the Bankruptcy Code.

### E.  The Effect of § 1322(c)(1), the "Gavel Rule," and Public Policy

Under § 1322(b)(2) of the Bankruptcy Code, a Chapter 13 debtor's plan of reorganization may, among other things, "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2). The prohibition on modification of claims secured only by a security interest in a principal residence, however, finds an exception in § 1322(c)(1), which provides that "[n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law – (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3)

or (5) of subsection (b) *until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; . . .*" 11 U.S.C. § 1322(c)(1) (emphasis supplied).

In examining the meaning of "sold at foreclosure sale," courts in this district have generally held that property is "sold," and a debtor's equity of redemption is extinguished, when the auctioneer and purchaser sign the memorandum of sale.  *See, e.g., In re Mellino*, 333 B.R. 578, 586 (Bankr. D. Mass. 2005); *In re Crichlow*, 322 B.R. 229, 235 (Bankr. D. Mass. 2004); *see also Tran v. Citizens Bank*, 2024 WL 249387 at *8 (concluding that it is "well-settled by both the courts of the Commonwealth and in this district that in the Commonwealth, a mortgagor's equity of redemption extinguishes upon the execution of a memorandum of sale at the auction sale"). Relying on, *inter alia*, the case of *U.S. Bank National Association v. Vertullo (In re Vertullo)*, the Defendants posit that the so-called "gavel rule" – namely, that "the phrase, 'sold at foreclosure sale,' means 'the cut-off point is when the gavel comes down on the last bid at the foreclosure sale," 610 B.R. 399, 411 (B.A.P. 1st Cir. 2020) (quoting *In re Crawford*, 232 B.R. 92, 96 (Bankr. N.D. Ohio 1999))[7] – reflects a policy decision favoring finality and predictability of the foreclosure process.

The observations above – that courts in Massachusetts have held that a mortgagor's equity of redemption is extinguished when a memorandum of sale is signed at a foreclosure sale and that § 1322(c)(1) only allows the cure of a mortgage on a primary residence prior to the foreclosure sale – may be correct, but they are largely irrelevant to the issues before the Court in this case. Section 1322(c)(1) says nothing of a debtor's right to bring an action to avoid a foreclosure sale, as contemplated by § 522(h) of the Bankruptcy Code.   Section 1322(c)(1) applies only in

---

[7] The *Vertullo* opinion is of somewhat limited application in this district, as it applied New Hampshire, and not Massachusetts, law.  Under Massachusetts law, the signing of the memorandum of sale, and not the "fall of the gavel," is the critical moment when a debtor's right of redemption is deemed terminated.

determining whether a debtor has the right to cure mortgage arrears under a Chapter 13 plan or whether a valid, *unavoided* foreclosure sale has occurred (cutting off the debtor's right to cure). There is no dispute here that the foreclosure of the Debtor's equity of redemption occurred when the memorandum of sale was signed.   However, as discussed above, notwithstanding the completion of that foreclosure sale, the Bankruptcy Code, through §§ 522(h) and 544(a)(3), now allows the debtor to *undo* – "avoid" – that transfer.   This interpretation of the Code does not do violence to the general rule of statutory construction requiring statutory provisions to be construed in "harmony" and not at "cross-purposes."   *Jones v. Hendrix*, 599 U.S. 465, 478 (2023).   The fact that a debtor may, under specific circumstances, avoid a completed foreclosure sale through operation of §§ 522(h) and 544(a)(3) does not undermine the limitation on a debtor's right to cure mortgage arrears in § 1322(c)(1) when property has been sold at foreclosure and the foreclosure sale has not been avoided.

The Defendants' attempts to raise public policy arguments are also not persuasive.   A court must "look first to whether the statutory language is plain and unambiguous," and where the statute is not ambiguous, courts "generally do not look beyond the statutory language."   *United States v. Commonwealth Energy Sys. & Subsidiary Cos.*, 235 F.3d 11, 15 (1st Cir. 2000) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *Chevron U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837, 842 (1984)).   Here, the statutory scheme of § 522(h) is unquestionably designed to allow debtors to avoid certain prepetition property transfers and to avail themselves of exemptions in that property provided by the Bankruptcy Code.   And, in that respect, the Court agrees with the Debtor's assertion that "statutes *are* public policy."   Debtor Obj. 13.

The "flood of litigation" argument is easily disposed of.   For one, it would be an abdication of this Court's duties to deny statutorily-afforded relief merely out of a concern that others may

22

also seek relief to which they are entitled.  Additionally, a litigatory onslaught may be avoided by creditors' exercise of "diligence in perfecting one's interest against bona fide purchasers, creditors, or bankruptcy trustees." *Mularski*, 565 B.R. at 209.  And to the extent that the Defendants take issue with the policy choices reflected in the current statutory scheme, the Defendants "must look to the legislature for the relief [they] seek[ ], and not to the court." *Id.*

### F.  Remedies and Recovery under § 550

Having determined that the transfer of the Debtor's equity of redemption through the foreclosure sale is avoidable under § 544(a)(3) and that the Debtor has standing to avoid the transfer pursuant to § 522(h), the only remaining issue is what remedy on account of that avoidance is appropriate in this case.  Pursuant to § 551 of the Bankruptcy Code, a transfer avoided under § 544(a)(3) is automatically preserved for the benefit of the bankruptcy estate.  11 U.S.C. § 551.  However, § 522(i)(2) provides that "[n]otwithstanding section 551 of this title, a transfer avoided under section 544 . . . of this title, under subsection (f) or (h) of this section . . . may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection (g) of this section or paragraph (1) of this subsection."   11 U.S.C. § 522(i)(2).  Accordingly, because the transfer of the Debtor's equity of redemption will be avoided under § 544(a)(3), the equity of redemption may be preserved for the benefit of the Debtor (and the Debtor may exempt that property) pursuant to § 522(i)(2).

In addition to preservation of avoided transfers pursuant to § 551, § 550 "provides the bankruptcy court with flexibility to fashion a remedy so as to return the estate to its pre-transfer position.  The provision indicates the trustee may recover the property, or, if the court so orders, the value of the transferred property instead." *Rodriguez v. Drive Fin. Servs., L.P. (In re Trout)*, 609 F.3d 1106, 1111 (10th Cir. 2010); 11 U.S.C. § 550(a).  Generally speaking, in cases involving

the avoidance of a transfer of a nonpossessory interest, recovery under § 550 is not needed, as preservation of the avoided transfer is a sufficient remedy. *See Trout*, 609 F.3d at 1111. For example, in the *Trout* case, where the avoidance of a lien under § 547 and its preservation for the estate were sufficient to make the estate whole, the court did not permit the trustee to seek recovery under § 550, because return of the property would have been duplicative of what the trustee already received. *Id.* at 1110. The same principles should apply to cases where a debtor avoids a transfer pursuant to § 522(h) – that is, the preservation of the avoided transfer pursuant to § 522(i)(2) may be sufficient to make the debtor whole, without resort to further remedies available to the debtor under § 550 pursuant to § 522(i)(1).

In this case, the parties have not represented that possession of the Property has been relinquished by the Debtor, and thus there is no physical property to be recovered. Accordingly, preservation of the avoided transfer of the equity of redemption for the benefit of the Debtor appears to be a sufficient remedy to return the Debtor to the Debtor's pre-transfer position and no further recovery under § 550 is required.[8]

IV.  CONCLUSION

For all the foregoing reasons, the Court rules that the transfer of the Debtor's equity of redemption that occurred when the memorandum of sale was executed at the foreclosure sale of the Debtor's Property conducted on January 11, 2023 is avoidable by the Debtor pursuant to

---

[8] Because the Court concludes that no further recovery under § 550 is warranted in this case, the Court need not reach the additional issues with regard to § 550 raised by the Defendants. However, the Court notes that neither party fully developed arguments regarding recovery under § 550. If the Debtor believes that the Court's consideration of the appropriate remedy in this case warrants further reflection, the Debtor is free to file a motion requesting modification of the Court's judgment. Should the Debtor seek modification of the Court's judgment as to Count I on grounds that further recovery under § 550 is necessitated, both parties should be prepared to present more fulsome briefing on the issues to the Court.

§§ 522(h) and 544(a)(3) of the Bankruptcy Code.  The Court further determines that preservation of the avoided transfer pursuant to § 522(i)(2) is a sufficient remedy in this case.  Accordingly, the Debtor's "Motion for Partial Summary Judgment" will be GRANTED and the "Defendants Loancare, LLC and David Wellon's [sic] Joint Motion for Summary Judgment as to Count I" will be DENIED.  A separate Order and Judgment in conformity with this Memorandum will issue forthwith.

DATED: February 9, 2024                    By the Court,

Elizabeth D. Katz
United States Bankruptcy Judge